JUDGE KOELTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GINA MATTIVI AND RYAN STANGO,

                Plaintiffs,    :    08 Civ. _____

           v.    :    **COMPLAINT AND DEMAND FOR JURY TRIAL**

THE CITY OF NEW YORK, DETECTIVE
DONALD HOOK, SHIELD NO. 24812, and
SERGEANT PETER MARSALISI, SHIELD NO.
2697,

                Defendants.    :

08 CV 02800

RECEIVED MAR 17 2008 U.S.D.C. S.D. N.Y. CASHIERS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       Plaintiffs Gina Mattivi ("Mattivi") and Ryan Stango ("Stango") (collectively, "Plaintiffs"), by their attorneys, Spears & Imes LLP, for their complaint against defendants Detective Donald Hook ("Hook"), Sergeant Peter Marsalisi ("Marsalisi"), and the City of New York (collectively, "Defendants"), allege as follows:

### NATURE OF THE ACTION

    1.    This is a civil rights action seeking damages for Defendants' violations of Plaintiffs' rights, privileges, and immunities under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

    2.    Plaintiff Mattivi is a social worker at the Citizens Advice Bureau and lives in the Bronx, New York. At the time of the events described herein, Ms. Mattivi was a graduate student at the Columbia University School of Social Work.

    3.    Plaintiff Stango is a Senior Service Representative for Citigroup and lives in Brooklyn, New York.

4.	Plaintiffs seek redress for a violation of their civil rights that began with an unlawful traffic stop and quickly escalated out of control due to the abusive actions of Defendants Hook and Marsalisi.

5.	Late at night on April 10, 2006, Ms. Mattivi and Mr. Stango were pulled over by an unmarked car as Ms. Mattivi drove onto the entrance ramp for the West Side Highway at 125th Street. Detained on a dark and desolate roadway, they were approached by two men – Hook and Marsalisi – in plainclothes, with no visible police identification. Plaintiffs asked the men to show some proof that they were police officers, but the men responded with an angry, unprovoked, obscenity-laced rant. As Plaintiffs continued to request identification, Hook and Marsalisi's threats escalated and Hook attempted to violently force his way into the car. Terrified that they were being carjacked, Plaintiffs drove onto the West Side Highway. Marsalisi and Hook chased them down the highway, attempting to force their car off the road, while Plaintiffs called 911 for help. When Hook and Marsalisi caught up to Plaintiffs, they immediately arrested them, without cause.

6.	Hook and Marsalisi then pursued a wrongful and malicious prosecution of Plaintiffs to cover up their own misconduct during the initial stop, providing false and misleading testimony and withholding evidence before the grand jury and at Plaintiffs' criminal trial. At trial, the jury acquitted Mr. Stango and Ms. Mattivi of charges of assault, and the remaining charge was thereafter dismissed by the court. Meanwhile, during the year that the criminal proceedings dragged on, Plaintiffs suffered through a prolonged period of fear, anxiety, and financial distress while living under the specter of criminal conviction and imprisonment.

7.	As a result of the flagrant abuse of their authority by Defendants Hook and Marsalisi, and as a result of Defendant City of New York's failure to train, supervise, and discipline these two

officers, despite the officers' long and disturbing history of similar abuses, Plaintiffs suffered emotional and economic injury for which they seek vindication and redress in this action.

8. Specifically, Plaintiffs seek a finding that their rights have been violated, injunctive relief, damages, and attorneys' fees.

## JURISDICTION AND VENUE

9. This action arises under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367(a).

11. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) because the acts complained of herein occurred in the Southern District of New York.

## JURY DEMAND

12. Plaintiffs demand trial by jury in this action.

## THE PARTIES

13. Plaintiff Gina Mattivi is a citizen of the United States and resided in New York, New York at the time of the events giving rise to this Complaint. At that time, Ms. Mattivi was a graduate student at the Columbia University School of Social Work, working toward her Master's degree.

14. Plaintiff Ryan Stango is a citizen of the United States and resided in Jersey City, New Jersey at the time of the events giving rise to this Complaint. At that time, he was a Service Representative for Citigroup, a financial institution with offices in downtown Manhattan.

15. At the time of the events giving rise to the Complaint, Defendant Donald Hook, shield number 24812, was a police officer with the New York City Police Department ("NYPD") in

the Anti-Crime Unit of the 26th Precinct, acting in the capacity of agent, servant, and employee of Defendant City of New York, and within the scope of his employment. Upon information and belief, Defendant Hook has since been promoted to the rank of detective with the NYPD. Hook is sued in his personal and official capacities.

16. At the time of the events giving rise to this Complaint, Defendant Peter Marsalisi, shield number 2697, was a police officer with the NYPD in the Anti-Crime Unit of the 26th Precinct, acting in the capacity of agent, servant, and employee of Defendant City of New York, and within the scope of his employment. Defendant Marsalisi is now a sergeant assigned to the 46th Precinct of the NYPD. Marsalisi is sued in his personal and official capacities.

17. Defendant City of New York is a municipality organized and existing under the laws of the State of New York. The City of New York is authorized under the laws of the State of New York to maintain a police department, the NYPD, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. At all times relevant hereto, the City of New York, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and for the appointment, training, supervision, and conduct of all NYPD personnel. The City was also responsible for enforcing the rules of the NYPD and ensuring that all NYPD employees obey the laws of the United States and the State of New York.

18. At all times relevant hereto, the City of New York and the NYPD hired, employed, supervised, and controlled Defendants Hook and Marsalisi. At all times relevant hereto, Defendants Hook and Marsalisi were acting under color of state law and within the scope of their duties and functions as agents, employees, and officers of the City of New York and/or the NYPD.

## STATEMENT OF FACTS

19. On April 10, 2006, Ms. Mattivi and Mr. Stango were completing Ms. Mattivi's move from her Columbia University student apartment, located at 519 West 121st Street, to Mr. Stango's apartment, located in Jersey City, New Jersey. Between 10:30 p.m. and 11:00 p.m. that evening, Ms. Mattivi and Mr. Stango packed some of her belongings to take to the apartment in Jersey City. They packed these belongings into Ms. Mattivi's car, a gray Saturn Ion sedan.

20. After packing the car, Ms. Mattivi began to drive to Jersey City, with Mr. Stango as her passenger. Ms. Mattivi was planning to travel via the West Side Highway and ended up heading southbound on Twelfth Avenue toward 125th Street. At the intersection of Twelfth Avenue and 125th Street, she stopped for a red traffic light.

21. When the traffic light at Twelfth Avenue and 125th Street turned green, Ms. Mattivi turned right onto West 125th Street. She then made a left turn onto Marginal Street. From Marginal Street, Ms. Mattivi proceeded onto an entrance ramp for the West Side Highway. Ms. Mattivi did not commit any traffic violations as she drove.

**The Illegal Traffic Stop**

22. After Ms. Mattivi drove onto the entrance ramp, a dark car with flashing lights and a siren pulled up behind her. She pulled her car over to the right shoulder of the entrance ramp. The ramp was dark and desolate, completely devoid of other cars or people.

23. After Ms. Mattivi stopped, two men got out of the unmarked car and approached her car on either side. Although the car had a siren, it had no other official markings and was not clearly a police vehicle. The men were not in uniform and did not wear any visible badges or display any other identification.

24. One of the men – later identified as Defendant Marsalisi – approached Ms. Mattivi's side of the car and asked for her license and registration. He did not identify himself as a police officer or explain why he had activated his siren to detain Ms. Mattivi.

25. The other man – later identified as Defendant Hook – approached Mr. Stango's side of the car. He also did not identify himself as a police officer or say why the two men had stopped the car. When Mr. Stango asked who the man was, the man replied, "Who the fuck do you think I am, motherfucker?" Shocked, Mr. Stango asked to see police identification, and the man began pounding on Mr. Stango's window, yelling obscenities, and demanding that Mr. Stango roll down his window. Mr. Stango repeated his request for identification, but Hook continued to pound on the window and yell.

26. Ms. Mattivi heard the commotion on the passenger side. Frightened by Hook's alarming behavior, she asked Marsalisi, the man by her window, if she could see his police identification. Marsalisi refused to show identification. Increasingly scared, Ms. Mattivi repeated her request to see his badge, and he began yelling and swearing at her. Ms. Mattivi became terrified that these men were not in fact police officers and that she and Mr. Stango were being carjacked.

27. As the situation escalated, Mr. Stango rolled down his window slightly to try to talk to Hook. As soon as Mr. Stango lowered the window, Hook violently thrust his arm into the car, grabbing for Mr. Stango and attempting to unlock the door and force his way into the car.

28. When Ms. Mattivi saw Hook try to force his way into the car, she believed that she and Mr. Stango were in danger. As a result, Ms. Mattivi started her car and began to drive up the entrance ramp to flee the assailants. When the car began moving, Hook's arm was still inside the car. As soon as the car began to pick up speed, Mr. Stango lowered his window, allowing him and

Ms. Mattivi to escape the attack. Hook and Marsalisi jumped back into their car and followed Plaintiffs in pursuit.

**The Pursuit, Plaintiffs' Call to 911 for Help, and Plaintiffs' Unlawful Arrest**

29. Mr. Stango then called 911 on his cellular phone to request help. He explained to the 911 operator that he and Ms. Mattivi had been stopped by men who had tried to force their way into the car and that these men were now chasing him and Ms. Mattivi down the West Side Highway. Mr. Stango asked for the nearest police station where they could go for help. The operator told Mr. Stango that she would send help, but then the call was disconnected.

30. While Mr. Stango called 911, Ms. Mattivi drove down the highway with Hook and Marsalisi chasing her car. Hook and Marsalisi pulled their car alongside Ms. Mattivi's car and tried to run her off the road.

31. Mr. Stango called 911 a second time to ask for help and again requested the address of the nearest police station.

32. As Ms. Mattivi approached the intersection of 29th Street and the West Side Highway, a red light and the traffic stopped behind it were in her path, forcing her to stop. Hook and Marsalisi maneuvered their car to block Ms. Mattivi's car and Hook ran to her window. He was swearing and screaming, threatening, "I am going to fucking rip you apart." Other plainclothes police officers arrived at the scene. At this point, Ms. Mattivi for the first time saw a man approach the car who was wearing a badge around his neck. Ms. Mattivi got out of the car and was immediately handcuffed and arrested.

33. At the same time, Marsalisi ran to Mr. Stango's window and screamed at Mr. Stango to get out of the car. With the 911 operator still on his cellular phone, Mr. Stango repeated his request to Marsalisi for police identification, but Marsalisi responded, "Goddamn you. Goddamn

7

you!" Hook and Marsalisi yelled, "Get out of the fucking car mother fucker!" and "I'm gonna rip you out by your fucking neck!" They then violently dragged Mr. Stango from the car and handcuffed him. They continued to swear, "You fucking asshole," and "Fuck you mother fucker," and called him a "cock sucker."

34.     Despite the barrage of obscenities, Mr. Stango tried to explain that he and Ms. Mattivi did not know that Hook and Marsalisi were police officers, and thought that they were being attacked. Mr. Stango also explained that he had called 911 because he believed that they were in danger and that the 911 operator was still listening on his cellular phone.

35.     Marsalisi picked up the phone and spoke to the 911 operator. After some discussion with the operator, Marsalisi stated to the operator that everything at the scene was under control, that there were no injuries to report, and that he would handle things from there.

36.     Marsalisi and Hook also placed Mr. Stango under arrest.

**The Initial Charges and Arraignment**

37.     Hook and Marsalisi drove Ms. Mattivi to the 26th Precinct police station, while Mr. Stango was transported in another vehicle. During the drive, Hook and Marsalisi acknowledged that they knew Ms. Mattivi had only driven away because she was frightened.

38.     At the station, Marsalisi filed an arrest report charging Ms. Mattivi with assaulting a police officer, reckless endangerment, reckless driving, and traffic violations. He falsely claimed that she had initially been stopped for a traffic infraction; he did not specify what infraction she had supposedly committed.

39.     Marsalisi filed a similar arrest report charging Mr. Stango with assaulting a police officer, reckless endangerment, and resisting arrest.

40. On April 11, 2006, Marsalisi signed a misleading and untrue affirmation in support of these charges, which was forwarded to the Assistant District Attorney. In the affirmation, he falsely claimed that Ms. Mattivi had made an illegal right turn at a red traffic light prior to being stopped.

41. Ms. Mattivi and Mr. Stango were held in custody overnight and arraigned approximately twenty-four hours later on charges of Assault in the Second Degree, Reckless Endangerment in the First Degree, and Reckless Driving. Ms. Mattivi and Mr. Stango were released on their own recognizance, subject to the continuing jurisdiction of the court.

**The Improperly Procured Indictment**

42. In May 2006, Plaintiffs informed the Assistant District Attorney assigned to their criminal case of the 911 calls that shed light on the events of that night. They requested that she obtain and listen to tape recordings of these calls prior to determining whether to go forward with a prosecution. The Assistant District Attorney informed Plaintiffs that the NYPD had reported that it had no record of any such tapes or calls by Mr. Stango.

43. Plaintiffs' criminal defense attorneys thereafter obtained so-ordered subpoenas from the New York County Criminal Court requiring the NYPD to produce the 911 tapes and any related materials to the defense attorneys by August 29, 2006.

44. The NYPD refused to produce the tapes until October 4, 2006, the morning on which a grand jury was scheduled to consider the criminal charges against Plaintiffs. Upon information and belief, the prosecutor did not listen to the tapes at this time and did not present this evidence to the grand jury.

45. Hook and Marsalisi both testified falsely before the grand jury. Among other false statements, Marsalisi claimed that he showed Ms. Mattivi his police badge when she requested identification. Among other false statements, Hook claimed that he had approached Mr. Stango and

asked for his identification because he intended to issue Mr. Stango a summons for not wearing his seatbelt. No such summons was ever issued. In addition, neither Hook nor Marsalisi described their violent and aggressive actions during the illegal stop.

46. As a result of this malicious and false testimony and the suppression of the 911 tapes, the grand jury returned an indictment charging both Ms. Mattivi and Mr. Stango with two counts of Assault in the Second Degree and one count of Reckless Endangerment in the First Degree.

**Plaintiffs' Trial and Exoneration, and the Impact of the Criminal Proceeding Upon Them**

47. The criminal proceedings against Ms. Mattivi and Mr. Stango dragged on for approximately one and a half years, impairing their ability to earn a living during this entire period and causing deep emotional trauma.

48. During the period that they were under indictment, Ms. Mattivi and Mr. Stango suffered severe financial and emotional difficulties. Ms. Mattivi completed her degree at Columbia, but was unable to find work, despite repeated applications, due to the pending criminal charges. She was forced to exhaust her entire savings in order to support herself. Mr. Stango was denied a promotion based on the pending criminal charges and was informed that his employment was in jeopardy. Both Plaintiffs incurred costs as a result of the criminal proceedings, and both experienced substantial anxiety and emotional stress during this period.

49. In addition, during this period Ms. Mattivi and Mr. Stango were subject to the continuing jurisdiction of the criminal court and were required to appear in court on multiple occasions for pre-trial proceedings.

50. In March 2007, Ms. Mattivi and Mr. Stango were finally brought to trial on the criminal charges against them. The trial lasted approximately two weeks.

51. As before the grand jury, Defendants Marsalisi and Hook were central witnesses in the criminal trial against Plaintiffs. Again, both Marsalisi and Hook testified falsely. Among other false statements, they claimed that Ms. Mattivi made an illegal right turn at a red light, that they explained to Plaintiffs why Plaintiffs were pulled over, and that Hook requested identification from Mr. Stango and that Mr. Stango cursed at him in response. Neither Marsalisi nor Hook explained that they refused to show their police identification or that they violently cursed and screamed at Ms. Mattivi and Mr. Stango from the outset of the encounter.

52. The criminal proceedings against Ms. Mattivi and Mr. Stango terminated in their favor. On or about April 4, 2007, the jury acquitted Ms. Mattivi and Mr. Stango of both counts of assault. The jury hung on the charge of reckless endangerment, and this count was dismissed by the trial judge on September 19, 2007.

53. Directly as a result of Defendants' actions, including the illegal stop, false arrest, and malicious prosecution, Ms. Mattivi and Mr. Stango suffered physical, emotional, and financial injury. Plaintiffs suffered, among other things, loss of income, damage to their reputations, and a severe impairment of their ability to earn a living. In addition, Ms. Mattivi and Mr. Stango suffered mental anguish, shock, stress, embarrassment, and fear.

**Hook's Malicious Motives**

54. At Plaintiffs' criminal trial, Hook's personal physician, Dr. Doron Ilan, testified on behalf of the prosecution. He stated that he began treating Hook in July 2006 for a wrist injury and that Hook had ultimately undergone wrist surgery. Upon information and belief, Hook maintains that this wrist injury and surgery resulted from getting his arm caught in Ms. Mattivi's car on April 10, 2006.

11

55. On cross-examination at the criminal trial, Dr. Ilan revealed that he had diagnosed Hook with tendonitis, a repetitive stress injury.

56. Nonetheless, on information and belief, despite the lack of medical evidence connecting Hook's tendonitis of the wrist to any actions by Plaintiffs, Hook continues to seek monetary damages from them. Defendant Hook initially filed a claim with Ms. Mattivi's insurance carrier. Then, in December 2007, Hook filed a personal injury suit against Ms. Mattivi and Mr. Stango seeking damages.

**Hook and Marsalisi's History of Misconduct**

57. Upon information and belief, the incident on April 10, 2006 was just one example of an ongoing pattern of constitutional and civil rights violations perpetrated by Defendants Hook and Marsalisi.

58. Upon information and belief, there have been numerous civilian complaints alleging the use of excessive force and illegal stops and arrests filed against Defendants Hook and Marsalisi during their tenure with the NYPD.

59. Upon information and belief, Defendants Hook and Marsalisi have regularly conducted improper searches and seizures, including baseless car stops. The illegality of their conduct has been recognized by New York State Courts, which have suppressed evidence that Defendants Hook and Marsalisi improperly obtained in violation of individuals' constitutional rights.

60. Upon information and belief, Defendants Marsalisi and Hook also have a history of providing false testimony in criminal proceedings. Indeed, their misconduct was so flagrant that in 2004, Justice Bruce Allen of the New York County Supreme Court requested an investigation into their actions by the Office of the District Attorney.

61. These repeated, flagrant violations of citizens' constitutional and civil rights are a direct result of the policies and customs of the NYPD and the City, and their failure to properly train and supervise Hook and Marsalisi. Upon information and belief, rather than disciplining these officers following their repeated violations, the NYPD has evinced deliberate indifference to this issue. Neither Hook nor Marsalisi was reprimanded for his egregious actions in connection with the stop and arrest of Mr. Stango and Ms. Mattivi, or for their similarly egregious conduct in connection with other baseless stops and arrests. In fact, since this incident both Hook and Marsalisi have been promoted.

## FIRST CLAIM

Improper Seizure in Violation of 42 U.S.C. § 1983
(Against Defendants Hook and Marsalisi)

62. Paragraphs 1 through 61 are realleged and incorporated as if fully set forth herein.

63. Defendants Hook and Marsalisi had no reasonable suspicion of criminal activity or probable cause sufficient to justify a traffic stop of Ms. Mattivi and Mr. Stango on April 10, 2006. Ms. Mattivi did not commit any traffic infractions as she drove on that date.

64. Nonetheless, Defendants Hook and Marsalisi improperly seized Ms. Mattivi and Mr. Stango by activating sirens, directing that Ms. Mattivi pull over her car, approaching the car, and demanding identification.

65. By reason of the foregoing, the individual defendants, acting individually and in concert and conspiracy, violated the clearly established rights of Ms. Mattivi and Mr. Stango under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures.

66. Defendants Hook and Marsalisi acted intentionally and knowingly to deprive Plaintiffs of their rights secured by 42 U.S.C. § 1983 and the United States Constitution.

67. As a direct and proximate result of the misconduct described herein, Ms. Mattivi and Mr. Stango suffered damages in an amount to be determined at trial.

## SECOND CLAIM

Excessive Force in Violation of 42 U.S.C. § 1983
(Against Defendants Hook and Marsalisi)

68. Paragraphs 1 through 61 are realleged and incorporated as if fully set forth herein.

69. By violently pounding on Plaintiffs' car window, thrusting an arm into the car to grab Mr. Stango and force their way into the car, attempting to force Plaintiffs' car off the road, and the other actions described herein, Defendants Hook and Marsalisi used excessive and objectively unreasonable force in effectuating Plaintiffs' seizure and arrest.

70. By reason of the foregoing, the individual defendants, acting individually and in concert and conspiracy, violated the clearly established rights of Ms. Mattivi and Mr. Stango under the Fourth and Fourteenth Amendments not to suffer excessive force in the course of seizure and arrest.

71. Defendants Hook and Marsalisi acted intentionally and knowingly to deprive Plaintiffs of their rights secured by 42 U.S.C. § 1983 and the United States Constitution.

72. As a direct and proximate result of the misconduct described herein, Ms. Mattivi and Mr. Stango suffered damages in an amount to be determined at trial.

## THIRD CLAIM

Deprivation of Due Process in Violation of 42 U.S.C. § 1983
(Against Defendants Hook and Marsalisi)

73. Paragraphs 1 through 61 are realleged and incorporated as if fully set forth herein.

74. By the unreasonable, excessive, fundamentally unfair, and conscience-shocking actions described herein, including their refusal to provide identification upon request, their

obscenity-laced verbal abuse of Plaintiffs, and their threats and use of excessive force, the individual defendants, acting individually and in concert and conspiracy, violated the clearly established rights of Ms. Mattivi and Mr. Stango under the Fifth and Fourteenth Amendments to be protected against deprivations of due process.

75. Defendants Hook and Marsalisi acted intentionally and knowingly to deprive Plaintiffs of their rights secured by 42 U.S.C. § 1983 and the United States Constitution.

76. As a direct and proximate result of the misconduct described herein, Ms. Mattivi and Mr. Stango suffered damages in an amount to be determined at trial.

### FOURTH CLAIM

False Arrest and Imprisonment in Violation of 42 U.S.C. § 1983
(Against Defendants Hook and Marsalisi)

77. Paragraphs 1 through 61 are realleged and incorporated as if fully set forth herein.

78. Defendants Hook and Marsalisi forcibly apprehended, arrested, and imprisoned Plaintiffs without a valid warrant, without Plaintiffs' consent, and without probable cause. Plaintiffs were falsely arrested and denied their liberty for an extended period, as described above.

79. By reason of the foregoing, the individual defendants, acting individually and in concert and conspiracy, violated the clearly established rights of Ms. Mattivi and Mr. Stango under the Fourth and Fourteenth Amendments not to suffer false arrest and imprisonment.

80. Defendants Hook and Marsalisi acted intentionally and knowingly to deprive Plaintiffs of their rights secured by 42 U.S.C. § 1983 and the United States Constitution.

81. As a direct and proximate result of the misconduct described herein, Ms. Mattivi and Mr. Stango suffered damages in an amount to be determined at trial.

## FIFTH CLAIM

Abuse of Process in Violation of 42 U.S.C. § 1983
(Against Defendants Hook and Marsalisi)

82. Paragraphs 1 through 61 are realleged and incorporated as if fully set forth herein.

83. Defendants Hook and Marsalisi employed regularly-issued legal process to compel Plaintiffs to act, including, without limitation, causing Plaintiffs to appear for arraignment on criminal charges and at multiple additional court proceedings.

84. The individual defendants undertook these actions without cause, excuse, or justification, and in furtherance of their own ulterior and illegitimate motives, which included concealing their own unconstitutional actions and extracting monetary damages from Plaintiffs.

85. By reason of the foregoing, the individual defendants, acting individually and in concert and conspiracy, violated the clearly established rights of Ms. Mattivi and Mr. Stango under the Fifth and Fourteenth Amendments to be free from abuses of process.

86. Defendants Hook and Marsalisi acted intentionally and knowingly to deprive Plaintiffs of their rights secured by 42 U.S.C. § 1983 and the United States Constitution.

87. As a direct and proximate result of the misconduct described herein, Ms. Mattivi and Mr. Stango suffered damages in an amount to be determined at trial.

## SIXTH CLAIM

Malicious Prosecution in Violation of 42 U.S.C. § 1983
(Against Defendants Hook and Marsalisi)

88. Paragraphs 1 through 61 are realleged and incorporated as if fully set forth herein.

89. Defendants Hook and Marsalisi maliciously initiated criminal proceedings against Plaintiffs, charging them with criminal offenses. The individual defendants commenced these proceedings without probable cause.

90.   Thereafter, Defendants Hook and Marsalisi helped procure an improper indictment through wrongful acts, including, without limitation, false and misleading testimony before the grand jury.

91.   As a result of Defendant Hook and Marsalisi's malicious actions, Ms. Mattivi and Mr. Stango were subject to the continuing supervision of the criminal court and restraints on their liberty.

92.   The criminal proceedings terminated in Plaintiffs' favor.

93.   By reason of the foregoing, the individual defendants, acting individually and in concert and conspiracy, violated the clearly established rights of Ms. Mattivi and Mr. Stango under the Fourth and Fourteenth Amendments to be free from malicious prosecution.

94.   Defendants Hook and Marsalisi acted intentionally and knowingly to deprive Plaintiffs of their rights secured by 42 U.S.C. § 1983 and the United States Constitution.

95.   As a direct and proximate result of the misconduct described herein, Ms. Mattivi and Mr. Stango suffered damages in an amount to be determined at trial.

### SEVENTH CLAIM

Denial of Right to Fair Trial in Violation of 42 U.S.C. § 1983
(Against Defendants Hook and Marsalisi)

96.   Paragraphs 1 through 61 are realleged and incorporated as if fully set forth herein.

97.   Defendants Hook and Marsalisi maliciously testified falsely in the criminal trial against Plaintiffs.

98.   By reason of the foregoing, the individual defendants, acting in concert and conspiracy, violated the clearly established rights of Ms. Mattivi and Mr. Stango under the Sixth and Fourteenth Amendments to a fair trial.

99.   Defendants Hook and Marsalisi acted intentionally and knowingly to deprive Plaintiffs of their rights secured by 42 U.S.C. § 1983 and the United States Constitution.

100. As a direct and proximate result of the misconduct described herein, Ms. Mattivi and Mr. Stango suffered damages in an amount to be determined at trial.

## EIGHTH CLAIM

Violations of 42 U.S.C. § 1983
(*Monell* Claim against City of New York)

101. Paragraphs 1 through 61 are realleged and incorporated as if fully set forth herein.

102. Defendant City of New York is liable for the unconstitutional actions by the individual defendants because the City of New York, acting through the NYPD, developed, implemented, enforced, encouraged, and sanctioned *de facto* policies, practices, and/or customs exhibiting deliberate indifference to the Plaintiffs' constitutional rights, which caused the violation of such rights.

103. Upon information and belief, Defendants Hook and Marsalisi have an extensive history of making illegal stops and their supervisors are aware of numerous instances of misconduct similar to that described herein.

104. Upon information and belief, Defendants Hook and Marsalisi have an extensive history of using excessive force to effectuate seizures and arrests, and their supervisors are aware of numerous instances of misconduct similar to that described herein.

105. Upon information and belief, Defendants Hook and Marsalisi have an extensive history of providing false testimony and fabricating evidence in criminal proceedings, and their supervisors are aware of numerous instances of misconduct similar to that described herein.

106. Thus, Defendant City of New York is liable for the unconstitutional actions by Defendants Hook and Marsalisi as a result of (a) the City's failure to properly and adequately train, supervise and/or discipline Defendants Hook and Marsalisi, thereby failing to discourage further constitutional violations and (b) the City's failure to properly and adequately investigate citizen

complaints against Defendants Hook and Marsalisi and take appropriate remedial action, instead tolerating such repeated acts of misconduct.

107. Rather than disciplining these individual defendants, the City has continued to employ and promote them in the NYPD, evincing deliberate indifference to the constitutional violations repeatedly perpetrated by these individual defendants.

108. As a direct and proximate result of the City's misconduct described herein, Ms. Mattivi and Mr. Stango suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

a) Declaring that Defendants' conduct violated Plaintiffs' rights under the United States Constitution in the manner alleged herein;

b) Ordering Defendants to pay compensatory damages to Plaintiffs in an amount to be determined at trial;

c) Ordering Defendants to pay punitive damages to Plaintiffs in an amount to be determined at trial;

d) Ordering appropriate injunctive relief;

e) Ordering Defendants to pay Plaintiffs' attorneys' fees and costs, pursuant to 42 U.S.C. § 1988; and

f) Granting such other and further relief as this Court may deem just and appropriate.

Dated: New York, New York
March 17, 2008

SPEARS & IMES LLP
Attorneys for Plaintiffs

By: /s/ David Spears
David Spears
Sarah Baumgartel
J. Ellen Blain

51 Madison Avenue
New York, New York 10010
Telephone: (212) 213-6996
Facsimile: (212) 213-0849
dspears@spearsimes.com
sbaumgartel@spearsimes.com
eblain@spearsimes.com